# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G.L., and MR. G.L. & MRS. E.L., in their own right, | ) ) ) | |
| Plaintiffs, | ) ) | 2:13-cv-00034 |
| v. | ) ) | Judge Mark R. Hornak |
| LIGONIER VALLEY SCHOOL DISTRICT AUTHORITY, | ) ) ) ) | |
| Defendant. | | |

## OPINION

**Mark R. Hornak, United States District Judge**

This is an action brought by G.L. and his parents, Mr. G.L. and Mrs. E.L. ("Plaintiffs"), in their own right, seeking review of the administrative decision of a Pennsylvania Special Education Hearing Officer ("Hearing Officer") that a portion of Plaintiffs' claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1419, were time-barred by the relevant statute of limitations.[1] Plaintiffs also seek money damages and attorneys' fees and costs pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, from the Defendant, Ligonier Valley School District Authority ("The District"), on the basis of the Hearing Officer's determination that the District discriminated against Plaintiffs by failing to provide them with G.L.'s academic records and retaliated against Plaintiffs after they complained about the discrimination.

---

[1] Any party aggrieved by the findings and decision made under the IDEA by a state educational agency has the right to bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

Before the Court are two Motions – one filed by the District to dismiss a number of Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim, and the other filed by Plaintiffs seeking reversal of the Hearing Officer's decision as to the timeliness of the asserted claims in order to allow Plaintiffs to proffer additional evidence as to their claims. The Court has considered the parties' moving, opposition, and reply papers, has had the benefit of oral argument, and for the reasons that follow, will deny both motions and remand the case to the Hearing Officer. The Court will also include in its Order the certification of the matter for permission to seek interlocutory review pursuant to 28 U.S.C. § 1292(b) as to the interpretation and application of Sections 1415(f)(3)(C) and 1415(b)(6)(B) of IDEA.

## I.    **BACKGROUND AND FACTS**

According to the Complaint, G.L. began attending school in the District in the 2008-09 school year when he enrolled in the District High School for 9th grade. CP ¶ 30. On October 14, 2009, after Mr. G.L. and Mrs. E.L. ("the parents") requested that G.L. be evaluated for special education purposes, the District issued an Evaluation Report District finding that G.L. had a specific learning disability. *Id.* at ¶¶ 49, 63, 66. Pursuant to that finding, the District drafted a proposed Individualized Education Plan ("IEP")[2] for G.L. by November 3, 2009. *Id.* at ¶ 69. The parents found the proposed IEP inadequate, and they contend that the District continually failed to address G.L.'s special needs with a satisfactory IEP. *Id.* at 70, 72, 78-80. On November 24, 2009, the parents filed a complaint with the Pennsylvania Department of

---

[2] Under IDEA, school districts must design and administer an IEP for every special education student. 20 U.S.C. §§ 1412(a)(4), 1414(d). An IEP is a roadmap for a program of individualized instruction, consisting of "a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 589 (3d Cir. 2000).

Education's Bureau of Special Education ("PDE")[3], alleging that the District had failed in its duty to evaluate G.L. for special education services during the 2008-09 school year. *Id.* at ¶ 72. G.L. stopped attending the District High School after January 15, 2010. *Id.* at ¶ 83.

Plaintiffs filed for a special education due process hearing pursuant to IDEA on January 9, 2012.[4] *Id.* at ¶¶ 2, 122. Specifically, they alleged that the District had denied G.L. a free appropriate public education ("FAPE")[5], a right guaranteed to special needs children by IDEA[6] and Section 504[7], as the result of inappropriate IEPs and the District's failure to prevent G.L. from being harassed by other students. ECF No. 1-6, at 2. Plaintiffs also claimed that they suffered unlawful discrimination when the District repeatedly failed to provide them with G.L.'s comprehensive academic records upon request, and that the District unlawfully retaliated against them for pursuing protections for students with disabilities guaranteed by IDEA and Section 504 by challenging their residence within the District. *Id.*

In a preliminary ruling on March 23, 2012, the Hearing Officer barred Plaintiffs from asserting claims of alleged IDEA violations prior to January 9, 2010 (the date two years prior to

---

[3] IDEA requires any state educational agency, state agency, or local educational agency that receives federal funding to provide "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or education placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

[4] Once a complaint has been received under § 1415(b)(6), the parents involved in the complaint "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). At the hearing, "a hearing officer will resolve issues raised in the complaint." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007) (citing 20 U.S.C. § 1415(f)(3)). Pennsylvania regulations provide: "If parents disagree with the school district's…identification, evaluation, or placement of, or the provision of a free appropriate public education to the student or young child, the parent may request an impartial due process hearing." 22 Pa. Code § 14.162(b).

[5] A FAPE is "an educational instruction 'specially designed…to meet the unique needs of a child with a disability,' coupled with any additional 'related services' that are 'required to assist a child with a disability to benefit from [that instruction].'" *Winkelman*, 550 U.S. at 524 (citing 20 U.S.C. §§ 1401(29), 1401(26), 1401(9)).

[6] 20 U.S.C. § 1412(a)(1).

[7] 29 U.S.C. § 794(a), (b)(2)(B).

3

the date of the due process hearing request). ECF No. 1-2, at 11. The Hearing Officer concluded that two separate sections of IDEA, 20 U.S.C. §§ 1415(b)(6)(B) and 1415(f)(3)(C), as well as their corresponding implementing federal regulations, 34 C.F.R. § 300.507(a)(2) and 34 C.F.R. § 300.511(e), limited the scope of Plaintiffs' IDEA claims to claims for relief as to matters occurring within two years of the date they filed their due process hearing request. *Id.* at 7-11. The Hearing Officer's determination therefore restricted Plaintiffs' viable claims to those arising during the three months before G.L. withdrew from the District High School on March 9, 2010. *Id.* at 11.

In his October 9, 2012 merits decision, the Hearing Officer concluded that Plaintiffs had not met their burden of showing that the District denied G.L. a FAPE under IDEA and Section 504 and awarded no compensatory education. ECF No. 1-6, at 11-13. However, the Hearing Officer also found that under Section 504, the District discriminated against Plaintiffs by failing to provide them with comprehensive school records and retaliated against Plaintiffs for seeking a special needs evaluation of G.L. by challenging the family's residency in the District. *Id.* at 13-18.

Plaintiffs filed their Complaint in this Court on January 7, 2013, requesting review of the Hearing Officer's determination on the IDEA statute of limitations, seeking authority for the submission of additional evidence as to their IDEA claims[8], and monetary damages on the basis of the Hearing Officer's conclusion that the District had violated Section 504. ECF No. 1 at 2-3. The District filed a Partial Motion to Dismiss the Complaint on March 11, 2013, seeking to dismiss Plaintiffs' request for review of the Hearing Officer's ruling on the IDEA statute of limitations and their related request for submission of additional evidence on their IDEA claims,

---

[8] As to this point, Plaintiffs seek to make a record as to claims for relief which the Hearing Officer found to be time-barred.

4

and their claims under Section 504 and Title II of the ADA, along with a Brief in Support of its

Motion. ECF Nos. 9, 10. Plaintiffs filed a Reply on May 24, 2013, ECF No. 12, and two

Supplemental Memoranda in Opposition to Defendant's Motion to Dismiss on July 26, 2013.

ECF Nos. 25, 26. Plaintiffs also filed a Motion for the Proffer of Additional Evidence on May

24, 2013, ECF No. 15, to which the District filed a Response on June 7, 2013. ECF No. 18.

Oral argument was held on August 6, 2013. Finally, on August 26, 2013, both parties filed

copious supplemental authority regarding the District's Partial Motion to Dismiss. ECF Nos. 38-

52.

## II. **DISCUSSION**

The primary issue before the Court involves the interplay between 20 U.S.C.

§§ 1415(f)(3)(C) and 1415(b)(6)(B). Section 1415(f)(3)(C)[9] states:

> A parent or agency shall request an impartial due process hearing within 2 years
> of the date the parent or agency knew or should have known about the alleged
> action that forms the basis of the complaint, or, if the State has an explicit time
> limitation for requesting such a hearing under this subchapter, in such time as the
> State law allows.

Section 1415(b)(6)(B)[10], on the other hand, provides:

> The procedures required by this section shall include the following . . . **(6)** An
> opportunity for any party to present a complaint-- . . . **(B)** which sets forth an
> alleged violation that occurred not more than 2 years before the date the parent or
> public agency knew or should have known about the alleged action that forms the
> basis of the complaint, or, if the State has an explicit time limitation for presenting
> such a complaint under this subchapter, in such time as the State law allows,
> except that the exceptions to the timeline[11] described in subsection (f)(3)(D) shall
> apply to the timeline described in this subparagraph.

---

[9] *See also* 34 C.F.R. § 300.511(e) ("Timeline for requesting a hearing. A parent or agency must request an impartial hearing on their due process complaint within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the due process complaint...").

[10] *See also* 34 C.F.R. § 300.507(a)(2) ("The due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint . . .").

[11] Statutory exceptions to this timeline are not at issue in this case.

Plaintiffs argue that the Hearing Officer made an error of law in determining that §§ 1415(f)(3)(C) and 1415(b)(6)(B), read together, create a single 2-year filing limitation that bars any IDEA claim for relief as to any violations prior to two years before the filing date of the due process hearing request. Instead, Plaintiffs contend, the statutory provisions should be read as providing for two distinct time limitations – §1415(f)(3)(C) requires parents to request a due process hearing within two years of the "knew or should have known" ("KOSHK") date, while under §1415(b)(6)(B), parents may not bring allegations of IDEA violations occurring more than two years before the KOSHK date.[12] This type of construction is known as a "2+2" analysis, because it allows two years after the KOSHK date for a plaintiff to file a due process complaint, and the period of up to two years before the KOSHK date for which plaintiffs may allege IDEA violations occurred. Therefore, under the "2+2" analysis, the scope of an IDEA due process claim can total four years, while under the Hearing Officer's construction, the scope of such a claim may only include claims for relief as to asserted violations within two years prior to the date of filing of the due process hearing request – in this case, a period of three months.

## A. Plain Language of the Statute

The issue before the Court is one of statutory interpretation. Accordingly, the Court begins with an analysis of the plain language of both statutory provisions and their corresponding regulations. *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) ("Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with the plain language of the statute itself.") (citations omitted). In construing a statute and its attendant regulations, a court must

---

[12] The Hearing Officer determined the KOSHK date to be March 9, 2010. ECF No. 1-2, at 11.

give meaning to all provisions contained therein, so that no part is inoperative or superfluous. *United States v. Higgins*, 128 F.3d 138, 142 (3d Cir. 1997).

The Third Circuit has held that:

> [t]he words of a statute are not to be lightly jettisoned by courts looking to impose their own logic on a statutory scheme. (Courts may look behind a statute only when the plain meaning produces a result that is not just unwise but is clearly absurd.) When statutory language is plain and unambiguous, the sole function of the courts . . . is to enforce it according to its terms. [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. It is for Congress, not the courts, to enact legislation. When courts disregard the language Congress has used in an unambiguous statute, they amend or repeal that which Congress enacted into law. Such a failure to defer to the clearly expressed statutory language of Congress runs contrary to the bedrock principles of our democratic society. (Our unwillingness to soften the import of Congress' chosen words . . . results from deference to the supremacy of the Legislature.).

*In re Visteon Corp.*, 612 F.3d 210, 219-20 (3d Cir. 2010) (citations and quotations omitted). Where the statutory language is unambiguous, the court's inquiry is complete, and it should not consider statutory purpose or legislative history. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992); *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010)).

The plain language of the statute suggests that § 1415(f)(3)(C) sets a two year period of time in which a party must request a due process hearing, measured forward from the KOSHK date, and § 1415(b)(6)(B) establishes a two year "look-back" limit (measured from the KOSHK date) on liability. Section 1415(f)(3)(C) states that a party *shall* request a due process hearing *within* 2 years of the KOSHK date. This language is forward-looking, setting a time limit beyond the KOSHK date for plaintiffs to file their complaints. Conversely, Section 1415(b)(6)(B) states that a party *may* present a complaint setting forth an alleged violation that occurred not more than two years *before* the KOSHK date. This language looks backward from

the KOSHK date and sets a time limit prior to the KOSHK date within which plaintiffs may claim IDEA violations occurred.

The regulations concerning the statutory provisions in question are similarly worded. 34 C.F.R. § 300.511(e) is entitled "Timeline for requesting a hearing," and requires a party to file their due process hearing request *within* two years of the KOSHK date. Alternatively, 34 C.F.R. § 300.507(a)(2) contains no such title, and provides that the due process complaint itself must allege violations that occurred not more than two years *before* the KOSHK date. The plain language of these regulations further supports the proposition that Section 1415(f)(3)(C) concerns the permissible timing of filing a due process hearing complaint, while Section 1415(b)(6)(B) concerns the validity of the actual contents of that complaint.

The plain meaning of the statutory provisions and their corresponding regulations is seemingly clear – IDEA plaintiffs have two years *after* the KOSHK date to file a due process complaint, and in that complaint they may allege IDEA violations occurring up to two years *before* the KOSHK date.[13]  This construction properly gives independent meaning to both sections, rather than combining them to stand for the same two-year limitation, as the District suggests. Because the Court finds that the words of the statute are clear and unambiguous, and a "2+2" construction would not produce an absurd result, it will not inquire further into the statute's meaning. *In re Segal*, 57 F.3d 342, 346 (3d Cir. 1995).

---

[13] It is not unusual for federal statutes to provide both a limitations period for filing a complaint and a "look-back" time period for liability purposes. For instance, Title VII of the Civil Rights Act of 1964 requires that a charge under its authority must be filed within 180 days after the occurrence of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). At the same time, it limits back pay liability accrual to two years prior to the filing of a charge with the Equal Employment Opportunity Commission, 42 U.S.C. § 2000e-5(g)(1), and recognizes a violation of the Act "each time wages, benefits, or other compensation is paid, resulting in whole or in part from [a discriminatory compensation decision or practice]." 42 U.S.C. § 2000e-5(e)(3)(A).

## B. Case Law

A "2+2" construction of the relevant statutory sections is further buttressed by case law addressing this question. In *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 773-74 (M.D. Pa. 2012), the court directly addressed the relationship between Section 1415(f)(3)(C) and Section 1415(b)(6)(B). The court explained that Section 1415(f)(3)(C), "which controls the limitations period for filing an IDEA action, requires that a plaintiff must request their due process hearing within two years of the date that the parent or agency 'knew or should have known' about the alleged violations." *I.H.*, 842 F. Supp. 2d at 774. Because the KOSHK date was undisputed and fell on June 8, 2010 (and the due process complaint was filed on August 25, 2010), the court determined that the claim was timely filed. *Id.* The court next addressed Section 1415(b)(6)(B), explaining that this second section "provides a limitations period for the scope of the action, that is, which alleged violations or harms may have been included in the complaint." *Id.* The court held that § 1415(b)(6)(B) limited the plaintiff's claims to those occurring after June 8, 2008 (two years *before* the KOSHK date) and dismissed all earlier claims raised by the plaintiff. *Id.* at 775. The court's opinion in *I.H.* demonstrates that the two sections are appropriately read as separate provisions, one setting a limitations period for the filing of claims, and the other limiting the chronological scope of alleged violations.

The District's argument that the Hearing Officer properly limited Plaintiffs' claims to those that occurred after January 9, 2010 relies primarily on two cases decided after *I.H.*: *D.K. v. Abington Sch. Dist.*, 696 F.3d 233 (3d Cir. 2012), and *Lauren G. ex rel. Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375 (E.D. Pa. 2012). In *D.K.*, the Third Circuit cited to both Section 1415(f)(3)(C) and Section 1415(b)(6)(B) for the proposition that a two-year statute of limitations applied to request a due process hearing or file an administrative complaint. 696 F.3d

at 244. The primary issue with respect to the statute of limitations in *D.K.* revolved around whether certain statutory or common law exceptions not involved here applied to toll the applicable time periods. *Id.* at 244-49. At the outset of its discussion, our Court of Appeals noted that "[p]laintiffs do not dispute that because they requested a due process hearing on January 8, 2008, the statute of limitations generally would limit their claims to the School District's conduct after January 8, 2006. Nevertheless, they seek refuge in two exceptions to the statute of limitations and, alternatively, equitable tolling doctrines." *Id.* at 244. Consequently, given this concession, the specific matter before the Court in this case was not an issue for decision before the Third Circuit in *D.K.*. The District, however, contends that the language chosen by the court of appeals to describe, using the "statute of limitations" rubric, the temporal scope of relief permitted, at least implicitly rejects the "2+2" approach.

In *Lauren G*, the plaintiffs argued a 2+2 theory similar to Plaintiffs in this case. 906 F. Supp. 2d 375, 386. The court found that the plaintiffs' KOSHK date was earlier than they had alleged and that they accordingly failed to file their due process complaint within the two years required under § 1415(f)(3)(C). *Id.* at 387. The court noted, however, that it did "not reach the issue of whether Parents' statutory interpretation of § 1415 is correct because it is unnecessary to do so." *Id.* at 387, n.10. *Lauren G.* is therefore not relevant to the question this Court faces.

While the court of appeals' discussion in *D.K.* lumped §§ 1415(f)(3)(C) and 1415(b)(6)(B) together to stand for the notion that a plaintiff must file his or her due process complaint within two years of the KOSHK date, that court did not have before it for decision the specific issue present here, nor was resolution of the application of the "2+2" approach necessary to its decision. By the same token, that court did reference both of those sections in its statement relative to the temporal scope of relief in *D.K.*

In this Court's judgment, the plain language of the statute, along with guidance from *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, leads the Court to conclude that the hearing officer committed an error of law by limiting the recovery period to those alleged violations occurring after January 9, 2010. By the same token, the phraseology used by our Court of Appeals in *D.K.* may have been intended by that court to go beyond an observation as to a point not contested by the parties as to an important, controlling, and recurring issue of importance in this case, and the many others like it.

## III.   CONCLUSION AND CERTIFICATION

Because the Court concludes that the Hearing Officer made an error of law in determining that Plaintiffs' IDEA claims occurring before January 9, 2010 were time-barred by 20 U.S.C. §§ 1415(f)(3)(C) and 1415(b)(6)(B), Defendant's Partial Motion to Dismiss and Plaintiffs' Motion for the Proffer of Additional Evidence are denied, and the case will be remanded to the Hearing Officer for further proceedings consistent with this Opinion.[14]

Additionally, for the reasons noted above, the Court will certify its order for an immediate petition for allowance to appeal to the Third Circuit under 28 U.S.C. § 1292(b) as to the question of the proper statutory interpretation and application of 20 U.S.C. §§ 1415(f)(3)(C) and 1415(b)(6)(B). For a district court to properly grant a certificate of appealability under § 1292(b), its order must: (1) involve a "controlling question of law," (2) offer "substantial grounds for difference of opinion" as to its correctness, and (3) if immediately appealed,

---

[14] Remand is proper to allow the Hearing Officer to reach the merits of the claims that were previously held to be time-barred. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982) ("[C]ourts must be careful to avoid imposing their view of preferable educational methods upon the States."); *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 526 (3d Cir. 1995) (authorizing district courts to remand IDEA actions to the state administrative system). In light of this Court's certification pursuant to 28 U.S.C. § 1292(b), the court will stay the effective date of such remand to allow for the filing of such a petition.

11

"materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

A question of law is controlling if its incorrect disposition would require reversal of the final judgment. *Katz*, 496 F.2d at 755. That is the case here – the difference between a "2+2" construction and the Hearing Officer's determination prospectively amounts to the validity or invalidity of several years' worth of claims. Substantial grounds also exist for a difference of opinion on the proper resolution of this question. While the Court believes its reading of the relevant statutory provisions is correct due to their plain and unambiguous meaning and guidance from the *I.H.* court, the Third Circuit has never ruled on this specific question, and only one district court opinion has directly addressed the interplay between the two statutory sections. In *D.K.*, the Third Circuit, while ruling on other questions, cited both sections when referencing the IDEA's statute of limitations and temporal scope of relief for due process hearing requests. 696 F.3d at 244. Because it appears that that court did not have the precise question of statutory interpretation before it as this Court does here, the Court does not find *D.K.* to be controlling on this issue. However, the language chosen by the Third Circuit in describing the plaintiffs' concession as to scope of relief in *D.K.* may mean that it will decide (or, perhaps has decided) the issue differently.

Finally, an appeal now on this central issue would materially advance the end of this litigation. Plaintiffs' Complaint locates the limitations issue "at the heart of the dispute between the parties." CP ¶ 2. Ultimate resolution of this issue would clearly and finally define the scope of Plaintiffs' claims and allow the Hearing Officer to properly proceed to the merits without remaining doubt as to their validity. Further, while § 1292(b) certification is reserved for exceptional cases, *Piazza v. Major League Baseball*, 836 F. Supp. 269, 270 (E.D. Pa. 1993)

12

(citing *Link v. Mercedes-Benz of N. Am.*, 550 F.2d 860, 863 (3d Cir. 1977)), the Court believes that this issue is exceptional. It is important to litigants on all sides of due process claims in public education settings, it is recurring, and is often dispositive (in whole or in large measure) of important IDEA claims and defenses.

Because all three requirements for interlocutory review under § 1292(b) are present, in addition to remanding the case to the Hearing Officer, the Court will authorize a petition for allowance of appeal pursuant to 28 U.S.C. § 1292(b) on the question of the proper application of 20 U.S.C. §§ 1415(f)(3)(C) and 1415(b)(6)(B), as follows:

> Whether, under the relevant provisions of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415(f)(3)(C) and 1415(b)(6)(B), and the relevant implementing regulations, 34 C.F.R. §§ 300.511(e) and 300.507(a)(2), the parents or local education agency filing a request for an impartial due process hearing pursuant to 20 U.S.C. § 1415(f)(1)(A) may, in their complaint, allege statutory violations occurring up to two years before the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or may only allege statutory violations occurring within two years prior to the date of the filing of the due process hearing request.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: December 30, 2013

cc: All counsel of record